CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
March 31, 2025
LAURA A. AUSTIN, CLERK
BY: s/ M.Poff, Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| BRIAN TURNER,<br>    Plaintiff,<br><br>v.<br><br>MATT MCCALL,<br>    Defendant. | Civil Action No. 7:24-cv-00351<br><br>By: Elizabeth K. Dillon<br>    Chief United States District Judge |

## MEMORANDUM OPINION

Plaintiff Brian Turner, a Virginia inmate proceeding *pro se*, brought this action pursuant to 42 U.S.C. § 1983 alleging that Matt McCall, a detective for Albemarle County, lied to a grand jury about a controlled drug purchase involving a confidential informant. (Compl., Dkt. No. 1.) Defendant has moved for summary judgment, arguing that he is entitled to absolute and qualified immunity. Turner has responded to McCall's motion. (Dkt. Nos. 23, 24.) Turner also filed a cross-motion for summary judgment. (Dkt. No. 27.) The court agrees that defendant is entitled to absolute immunity, in part, and to qualified immunity. Therefore, defendant's motion will be granted, and plaintiff's motion will be denied.

### I. BACKGROUND

**A. Plaintiff's Claims**

Turner alleges, in a verified complaint, that Detective McCall caused him to be arrested for a drug indictment when he testified to a grand jury that he had an audio/video recording of Turner performing a hand-to-hand drug transaction. The case was dismissed on November 5, 2022, because "they didn't have any of the stated evidence." According to Turner, the Commonwealth Attorney stated in court that there was no recording. Turner asserts that he was unlawfully held in custody for nine months. (Compl. 2.) Liberally construed, Turner alleges a

malicious prosecution claim based upon fabricated audio/video recordings and upon falsified grand jury testimony.

**B. Facts Supporting Defendant's Motion for Summary Judgment**

On November 3, 2021, Detective McCall and DEA Agent Pat Boucher conducted a controlled purchase as part of the JADE Task Force. (McCall Decl. ¶ 4, Dkt. No. 12-1.) A confidential informant (CI) known to McCall arranged to purchase crack cocaine at the apartment of another individual named Carter. (*Id.* ¶ 5.) Detective McCall and Agent Boucher provided the CI with audio and video recording devices and $250 to purchase the crack cocaine. (*Id.* ¶¶ 4, 6.)

After the CI entered Carter's apartment, Detective McCall and Agent Boucher positioned themselves so that they could see outside of Carter's apartment. (*Id.* ¶ 7.) They could also hear a live feed of the audio recording. (*Id.*) Carter told the CI that the dealer was driving a blue Mustang. (*Id.* ¶ 8.) Shortly thereafter, a black male parked a blue Mustang outside Carter's apartment, exited the Mustang, and entered Carter's apartment. (*Id.*) Detective McCall recognized the male but could not remember his name at the time. (*Id.* ¶ 9.)

The blue Mustang had a Virginia license plate with the number "TZV-6247." (*Id.*) A search of the identifier revealed that the Mustang was registered to Turner. Upon seeing Turner's name, Detective McCall remembered previously interviewing him. (*Id.*)

The CI purchased a substance from Turner for $250, and Turner gave Carter a portion of the money. (*Id.* ¶ 10.) The CI then left Carter's apartment and met Detective McCall and Agent Boucher at a prearranged location where they retrieved the substance from the CI and confirmed that the $250 was no longer on the CI's person. (*Id.*) Detective McCall returned to the JADE Task Force office and field tested the substance the CI purchased from Turner. (*Id.* ¶ 11.) The substance tested positive for crack cocaine. (*Id.*)

On February 7, 2022, Detective McCall testified before a grand jury. The same day, a grand jury indicted Turner for distributing a Schedule I or II controlled substance in violation of Virginia Code § 18.2-248. *See Commonwealth v. Turner*, No. CR22000031-00 (Albemarle Cnty. Cir. Ct.). Police officers arrested Turner on February 14, 2022. *See id.*

At a hearing before trial, the Assistant Commonwealth's Attorney stated that Turner's prosecution arose from a JADE Task Force operation and that the Office did not want to place the CI "in a difficult position of having to be revealed and to testify. (11/7/22 Hr'g Tr. 3, Dkt. No. 12-2.) Another potential witness had died, which made it difficult to proceed in sole reliance on the CI. (Hr'g Tr. 4; McCall Decl. ¶ 5.) The circuit court dismissed the charges against Turner via nolle prosequi. (Hr'g Tr. 5.)[1]

**C. Plaintiff's Response**

In his response to the motion for summary judgment, Turner states that the safety of the CI was never raised as an issue at the hearing where his charges were dismissed. (Dkt. No. 24 at 2.) He also asks for "state produced documents and evidence" which would show that he was confined due to defendant's "false and fabricated evidence." (Dkt. No. 23 at 2.) Turner asks the court to "compel the production of these documents, the transcript of the Nov 5th 2022 hearing in Albemarle Circuit Court . . . and the Grand Jury when the Indictment was filed." (Dkt. No. 14 at 3.) He insists that McCall's affidavit and grand jury testimony in support of probable cause was "proven to be false on the day of my trial," and as a result, the Commonwealth "moved to have the Indictment dismissed and allocuted in open court that it was no evidence to find probable cause to move forward with trial." (Dkt. No. 23 at 1–2.)

---

[1] Turner has since been indicted on multiple counts related to sex trafficking and prostitution in federal court. *See United States v. Turner*, No. 3:24-cr-8 (W.D. Va.).

**D. Plaintiff's Motion**

Turner argues that he should be granted summary judgment on his malicious prosecution claim based on the "incontrovertible facts." (Dkt. No. 27 at 2.) He claims that there was no probable cause because the defendant "can only point to the fabricated statements in the affidavit he submitted. In a case involving fabricated evidence that led to indictment courts have found that there can be no probable cause without the fabricated evidence." (*Id.* at 1.)

I.  ANALYSIS

**A. Summary Judgment Standard**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. That is, once the movant has met its burden to show the absence of a material fact dispute, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of fact precludes summary judgment. *Anderson*, 477

4

U.S. at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence is "so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

Where, as here, the parties have filed cross-motions for summary judgment, the court considers "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Kantsevoy v. LumenR LLC*, No. ELH-17-359, 2019 WL 1441982, at *6 (D. Md. Apr. 1, 2019) (citing *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)).

While the submissions of *pro se* litigants are liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the court must also abide the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003).

**B. Absolute Immunity**

Grand-jury witnesses are entitled to absolute immunity from § 1983 claims arising from the content of their testimony. *Rehberg v. Paulk*, 566 U.S. 356, 367, 369 (2012). This immunity "may not be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution." *Id.* Importantly, the immunity applies to law-enforcement officers such as Detective McCall. *Id.* at 367; *Everette-Oates v. Chapman*, No. 20-1093, 2021 WL 3089057, at *5 (4th Cir. July 22, 2021). It would be "anomalous to permit a police officer testifying before a grand jury to be sued for maliciously

procuring an unjust prosecution when it is the prosecutor, who is shielded by absolute immunity, who is actually responsible for the decision to initiate a prosecution." *Rehberg*, 566 U.S. at 371–72. And if "police officers were routinely forced to defend against claims based on their testimony, their energy and attention would be diverted from the pressing duty of enforcing the criminal law." *Id.* at 368–69. Thus, to the extent Turner contends that his injury was the result of McCall's testimony before the grand jury, McCall is entitled to absolute immunity.

Turner, however, argues that McCall does not have absolute immunity during the investigative period when he fabricated evidence. (Dkt. No. 24 at 2.) He asserts that his claim encompasses the audio and video evidence that was collected during the investigation. Case law supports Turner's assertion that malicious prosecution can be a viable claim against a law enforcement officer for actions separate from grand jury testimony. *See Black v. W. Virginia State Police*, 696 F. Supp. 3d 236, 249 (S.D.W. Va. 2023) (discussing application of *Rehberg*); *see also Harris v. Town Pines*, 110 F.4th 633, 639 (4th Cir. 2024). Accordingly, the court finds that McCall is not entitled to absolute immunity as to any non-grand-jury related claims. Because claims remain, the court turns to a qualified immunity analysis.

## C. Qualified Immunity

The qualified-immunity analysis involves two questions: (1) whether a constitutional violation occurred, and (2) whether the right at issue was clearly established at the time of the events in question. *Atkinson v. Godfrey*, 100 F.4th 498, 504 (4th Cir. 2024); *Reichle v. Howards*, 566 U.S. 658, 664 (2012). For the immunity to apply, one of the two questions must be resolved in favor of the defendant. *Henry v. Purnell*, 501 F.3d 374, 377 (4th Cir. 2007). The questions can be addressed in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

To prevail on a Fourth Amendment claim of malicious prosecution, a plaintiff must prove that the defendant "caused a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and criminal proceedings terminated in plaintiff's favor." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012). A grand jury indictment is an "intervening superseding cause that breaks the causal chain between a defendant-officers' misconduct and plaintiff's unlawful seizure," thereby insulating the officer from liability. *Evans*, 703 F.3d at 647. However, when an officer lies to or misleads a prosecutor, the officer may be held liable for malicious prosecution. *Id.* at 647–48.

Turner's claim is that Detective McCall fabricated audio and video evidence of the controlled purchase.[2] Turner alleges, in his verified complaint, that the Assistant Commonwealth Attorney stated in court that they would not prosecute the case because "they had no video or recording to support the false claims." (Compl. 2.) He has argued that McCall "submitted false evidence and affidavit to the office of the Commonwealth Attorney stating he had the plaintiff Brian Turner on video/audio tape doing a hand to hand drug deal . . . ." (Dkt. No. 14 at 2.) However, the hearing transcript disproves this assertion by Turner. (Dkt. No. 12-2.) Instead, the case was dismissed because another potential witness had died since Turner was indicted, and the Commonwealth did not want to place the CI in "a difficult position of having to be revealed and to testify." (Hr'g Tr. 3–4.)

Moreover, Turner's seizure was supported by probable cause absent any falsehoods about the existence of audio and/or video recordings. Probable cause is "a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). For "probable

---

[2] McCall offered to submit the audio and video evidence to the court under seal for in camera review. The court does not consider this necessary to resolve the pending motions.

7

cause to exist, there need only be enough evidence to warrant the belief of a reasonable officer that an offense has been or is being committed; evidence sufficient to convict is not required." *Durham v. Horner*, 690 F.3d 183, 190 (4th Cir. 2012). For instance, the suspected dealer was driving a blue Mustang, and Detective McCall saw a black male park a blue Mustang outside of Carter's apartment, exit the Mustang, and enter Carter's apartment. (McCall Decl. ¶ 8.) The Mustang was registered in Turner's name. (*Id.* ¶ 9.) Also, the CI entered Carter's apartment with $250 and without crack cocaine. (*Id.* ¶ 6.) When the CI met Detective McCall and Agent Boucher after the CI left Carter's apartment, the CI no longer had $250 and had a substance that field tested positive for crack cocaine. (*Id.* ¶¶ 10–11.) This evidence is enough to warrant a reasonable officer to conclude that Turner sold crack cocaine to the CI. Thus, the alleged fabrication of evidence by Detective McCall did not "cause a seizure of the plaintiff pursuant to legal process unsupported by probable cause . . ." *Evans*, 703 F.3d at 647.

Because probable cause existed to believe Turner violated the law, no constitutional violation occurred and Detective McCall is entitled to qualified immunity.

**C. Plaintiff's Motion for Summary Judgment**

Turner moves for summary judgment, arguing that because there was no probable cause and the proceeding ended in his favor, he is entitled to summary judgment on his malicious prosecution claim. The only admissible evidence submitted by Turner is his verified complaint. The allegations in his verified complaint are not sufficient to establish that he entitled to judgment as a matter of law. While Turner claims that there was no probable cause and his case was dismissed because there was no recording of the hand-to-hand drug transaction, this

8

allegation about the dismissal has been proven false by the transcript of the hearing,[3] which demonstrates that the case was dismissed because the Commonwealth Attorney did not want to force the CI to testify and reveal his identity. Moreover, Turner's arrest was supported by probable cause without reliance upon audio or video recordings for the reasons stated herein.

Therefore, the court will deny Turner's motion.

### III.  CONCLUSION

Detective McCall is entitled to absolute immunity, in part, and qualified immunity as to any remaining claims. Accordingly, his motion for summary judgment will be granted, and Turner's motion will be denied, in an appropriate order.

Entered: March 31, 2025

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
Chief United States District Judge

---

[3] Plaintiff asked the court to compel production of the hearing transcript and the grand jury transcript. (Dkt. No. 14.) While defendant did not provide the grand jury transcript, Turner has a copy of the hearing transcript because defendant's motion for summary judgment relies upon the transcript and the transcript was filed with the court.